UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARIAH DANIELS,<br><br>Plaintiff,<br><br>v.<br><br>DR. DENIS FIALLOS-MONTERO,<br><br>Defendant. | No. 2:16-cv-0852 WBS CKD P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. On August 17, 2016, the court screened plaintiff's first amended complaint, as the court is required to do under 28 U.S.C. § 1915A, and found service of process appropriate for defendant with respect to a claim arising under the Eighth Amendment. Defendant's motion for summary judgment is before the court.

I. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

/////

1

purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

II. Facts

On April 1, 2014, plaintiff arrived at the California Medical Facility (CMF) (ECF No. 34 at 53) where defendant was employed as a psychiatrist. On April 9, 2014, plaintiff met with defendant for a psychiatric assessment and medication review. In his report concerning the meeting (ECF No. 34 at 24), defendant wrote as follows:[1]

> He is a totally unreliable patient whose complaints dating back to 2010 (this is as far as I can go in the e-UHR[2]) have been extremely inconsistent, mostly complaint solely of "hearing voices" but consistently described with euthymic mood, affect congruous, no suicidal ideation, intent or plan. Multiple SREs[3] report <u>no prior history of suicide attempts</u>, however, more recently and suddenly, he reports 2 previous suicide attempts when around 15 years old. Also, used to be on Risperdal for some time until recently when he has been refusing all medications. Late last year transferred to CSP Solano and, upon receiving RVR[4] and on his way to ad-seg, declared suicidal ideation and was admitted to CTC.[5] During admission, refused medications, refused to come out of cell and

---

[1] Defendant's reports are quoted verbatim with punctuation and syntax errors.

[2] "Electronic Universal Health Record."

[3] "Schedule of Recent Events."

[4] "Rules Violation Report."

[5] "Correctional Treatment Center."

3

> started demanding to be made EOP[6] since he was in need of more treatment. After going back and forth to CTC, the last time refused to leave CTC when discharged and was almost cell extracted. However, he was made EOP and now is here. He is extremely demanding, entitled, saying he needs treatment. When I tried to obtain specific information as to what he needs help with, tells me "I need to be loved" and we are supposed to give it to him since, by having him incarcerated we have been depriving him of it. He has been extremely manipulative. Now he is EOP, one of his demands is that he now needs "a higher level of care" like DSH.[7]

Defendant found, after "extensive review of records and interview" that plaintiff did not present an "Axis I diagnosis," appeared to have "characterological disorder" and was "possibly exaggerating for secondary gain." Ultimately, defendant opted for "close monitoring" and "ongoing assessment of condition." Id.

Plaintiff asserts he told defendant he needed medication for stress, anxiety, anger, and because he was hearing voices. ECF No. 34 at 53. Plaintiff's complaint alleges that defendant told him that one of the reasons he did not prescribe medication for plaintiff is because "[defendant] was just getting to know plaintiff." ECF No. 10 at 3. Plaintiff had not been taking any medication for approximately two months prior to his visit with defendant. ECF No. 34 at 55. Plaintiff claims he stopped taking medication because of issues he was having with staff at California State Prison, Solano. Id. After he was transferred to CMF, plaintiff became desirous of treatment again. Id. at 55-56.

Plaintiff claims that he became suicidal the next day, April 10, 2014. He asked to be seen by the on-call physician who prescribed plaintiff a one-time dose of Zyprexa and was told he would be referred back to a psychiatrist for a long term solution. Id. at 57.

Plaintiff alleges that he became suicidal again on April 15, at which point plaintiff was prescribed about a week's worth of Vistaril, id. at 59, by on-call psychiatrist Dr. Soares. Dr. Soares told plaintiff to follow up with defendant. ECF No. 10 at 16.

On April 23, 2014, plaintiff was seen again by defendant after plaintiff cut his wrists. ECF No. 34 at 62. In his report regarding that visit, defendant wrote as follows:

---

[6] "Enhanced Outpatient Program."

[7] "Department of State Hospitals."

4

> [Plaintiff] has continued with his very manipulative demands now mostly geared toward obtaining medications. More recently, and prior to his arrival, had been refusing any medications. So far, has been seen by on call psychiatrist on two previous occasions during the week due to "suicidal threats" because no one is paying any attention to him. He invariably clams (*sic*) down once he is given Vistaril. When I see him today for this assessment, he is not on any acute distress, rather, continues to argue his innocence and the bad treatment he received while at Solano. He goes on and on this subject. However, I'm able to have him focus on what is the main source of his distress and after listing numerous symptoms, settle on "anxiety and depression." I then suggest starting him on Paxil while explaining Vistaril not appropriate as a long term option for treatment. He readily accepted this option.

Id. at 27.

In his complaint, plaintiff asserts he informed defendant that Vistaril does not work for him. ECF No. 10 at 4.

III. Eighth Amendment Standard For Healthcare

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). An individual is liable for such a violation only when the delay or denial was the result of at least deliberate indifference. Id. Finally, harm must have been caused by the indifference. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

A difference of opinion about the proper course of treatment is not deliberate indifference, nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Furthermore, mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference." Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay caused "significant harm and that Defendants should have known this to be the case." Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002).

/////

/////

IV. <u>Analysis</u>

In his motion, defendant asserts he entitled to summary judgment based upon the "qualified immunity" doctrine. The court agrees.

Qualified immunity shields government officials "from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (citations omitted).

While defendant did not prescribe any medication for plaintiff at their initial meeting, defendant opted for "close monitoring" and "ongoing assessment of condition." Plaintiff was not precluded from receiving follow up treatment if circumstances changed, as evidenced by the treatment he received over the next two weeks. In defendant's opinion as a medical expert, all of the treatment provided by him was appropriate considering plaintiff's symptoms and history. Plaintiff fails to point to any admissible medical opinion evidence suggesting otherwise, or that defendant's failure to prescribe plaintiff any medication during their first meeting caused plaintiff any injury. At best, plaintiff presents a difference of opinion between him and defendant which cannot, as a matter of law, provide the basis for a finding of deliberate indifference.

Most importantly, for the qualified immunity analysis, there is no law suggesting that under all of the facts considered in the light most favorable to plaintiff, it was incumbent upon defendant to prescribe psychotropic medication for plaintiff after their initial meeting.

V. <u>Conclusion</u>

For all of these reasons, defendant should be granted summary judgment on the basis of "qualified immunity" and this case should be closed.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 34) be granted; and

2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 11, 2018

_/s/ Carolyn K. Delaney_
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

---

1
dani0852.msj